# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA,**
**STATE OF FLORIDA, and**
***ex rel.* DONNA ISABELL, and**
**KATHERINE SCHWALBE,**

                **Plaintiffs/Relators,**

**v.**　　　　　　　　　　　　　　　　　　　**Case No. 8:16-cv-2076-T-27CPT**

**KINDRED HEALTHCARE, *et al.*,**

                **Defendants.**
_____/

## ORDER

**BEFORE THE COURT** are Defendants Kindred Healthcare, Inc., d/b/a Kindred at Home, Gentiva Health Services, Inc., Kindred Systems, Inc., Gentiva Health Services (Certified), Inc., and Senior Home Care, Inc.'s Motion to Dismiss Second Amended Complaint (Dkt. 102); Defendant Chris Gelvin's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 115); and Relators' oppositions to both motions (Dkts. 108, 118). Upon consideration, the motions to dismiss are **GRANTED**.

## I.　BACKGROUND

This action is brought by Relators Donna Isabell and Katherine Schwalbe. Donna Isabell worked as the Area Vice President for Defendant Kindred Healthcare for two years and five months. (Dkt. 97 ¶ 1). Katherine Schwalbe worked as an Account Manager for Defendant Senior Home Care for ten years and ten months. (Id. ¶ 2). Their Second Amended Complaint alleges that six defendants

1

(the "Kindred Defendants") violated the False Claims Act, 31 U.S.C. § 3729 *et seq*., by engaging in retaliation and various billing, fraudulent document, understaffing, and kickback schemes. Specifically, Relators contend these False Claims Act violations/schemes were carried out by the defendants through the "Presentation of False Claims" (Count I); "Making and Using False Records and Statements to get False Claims Paid" (Count II); "Retaliation" against Relator Isabell (Count III); and "Retaliation" against Relator Schwalbe (Count IV). *See* (Dkt. 97, Second Am. Compl., pp. 38-39).

Relators filed this action on March 11, 2016. (Dkt. 1). In May 2016, they filed an amended complaint. (Dkt. 7). In March 2018, the United States declined to intervene, and the complaint was unsealed. (Dkts. 36, 37). One month later, the State of Florida declined to intervene. (Dkt. 43). Relators later filed a Second Amended Complaint, which is now the subject of defendants' motions. (Dkts. 97, 102, 115).

## II.  STANDARD

To state a claim under the False Claims Act, a relator must satisfy two pleading standards. First, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And while "[l]egal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

Significantly, a False Claims Act complaint must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002). The particularity requirement of Rule 9(b) is satisfied if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (citing *Clausen*, 290 F.3d at 1310).

Generally, in order to plead the submission of a false claim with particularity, "a relator must identify the particular document and statement alleged to be false, who made or used it, when the statement was made, how the statement was false, and what the defendants obtained as a result." *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1225 (11th Cir. 2012). And in the context of a kickback scheme that violates the False Claim Act, "[t]o plead a violation of the Anti-Kickback Statute, the Relator must allege that (1) [defendant] knowingly and wilfully (2) offered or paid any remuneration (3) to induce a physician to refer a patient for services that may be paid by a federal health care [program]." *See* 42 U.S.C. § 1320a-7b(b)(2); *United States ex rel. Mastej v. Health Mgmt. Assocs, Inc.*, 591 F. App'x 693, 698 (11th Cir. 2014).

## III.    DISCUSSION

The "central question" in any False Claims Act case is "whether the defendant ever presented a 'false or fraudulent claim' to the government." *Hopper*, 588 F.3d at 1326 (quoting *Clausen*, 290 F.3d at 1311). A defendant violates the False Claims Act only by "knowingly ask[ing] the Government to pay amounts it does not owe," and not by "merely disregard[ing] Government regulations or [following] improper internal policies." *Clausen*, 290 F.3d at 1311. The requirement of alleging the "presentment" of a false claim cannot be overcome by detailing other improper

activity. *Id.* Rule 9(b) does not permit a relator "merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Id.* Rule 9(b) requires "some indicia of reliability . . . in the complaint to support the allegation of *an actual false claim* for payment being made to the Government." *Id.* (emphasis in original).[1]

The Second Amended Complaint is due to be dismissed because it lacks specific allegations that satisfy Rule 9(b). The first deficiency in the Second Amended Complaint is that it alleges no fewer than eleven different ways the six defendants violated the False Claims Act, yet only brings four causes of action under the Act, leaving it to the defendants and this Court to determine which scheme falls within which count. *See* (Dkt. 97 ¶¶ 59-200); (id. ¶¶ 270-273).[2] Accordingly, it is not clear which alleged scheme or what specific allegations relate to which False Claims Act count. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).

Secondly, the Second Amended Complaint impermissibly lumps together all defendants,

---

[1] In an unpublished decision, the Eleventh Circuit described how a plaintiff can satisfy the "indicia of reliability" requirement,

> The key inquiry is whether the complaint includes "some indicia of reliability" to support the allegation that an actual false claim was submitted. One way to satisfy this requirement is by alleging the details of false claims by providing specific billing information—such as dates, times, and amounts of actual false claims or copies of bills. In other circumstances, [the Eleventh Circuit] has deemed indicia of reliability sufficient where the relator alleged direct knowledge of the defendants' submission of false claims based on her own experiences and on information she learned in the course of her employment. . . . However, the basis of this direct knowledge must be pled with particularity.

*United States v. HPC Healthcare, Inc.*, 723 F. App'x 783, 789 (11th Cir. 2018), *cert. denied sub nom. U.S. ex rel. Chase v. Chapters Health Sys., Inc.*, 139 S. Ct. 69 (2018) (internal citations omitted).

[2] The schemes alleged include: (1) Patients Not Homebound - Billing Scheme, (2) Excessive Recertifications - Billing Scheme, (3) Double Billing Diabetic Patients - Billing Scheme, (4) Missing Visits To Increase Revenue - Billing Scheme, (5) Discharging and Billing Using the "RN-66" Form - Billing Scheme, (6) Claims Made Without Recertification Orders - Fraudulent Document Scheme, (7) Claims Made Without Required Face-to-Face Visits - Fraudulent Document Scheme, (8) Dr. Kurtis Biggs - Kickback Scheme, (9) Dr. Chris Gelvin - Kickback Scheme, (10) Paying Above Fair Market Value to Induce Referrals - Kickback Scheme, and (11) Understaffing Scheme. (See Dkt. 97 at p. 2).

4

failing to allege the conduct of each defendant. In a footnote, Relators assert that "Kindred Healthcare, Inc. is now responsible for the conduct of the Kindred Defendants through acquisition or merger. As a result, throughout this complaint, conduct of the defendant entities will be attributed to 'Kindred' as the entity now responsible for conduct of its divisions and subsidiaries." (Dkt. 97, p. 3 n.1).[3] This explanation, however, is nothing more than a conclusory allegation without supporting facts. *See Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (dismissal proper when complaint "devoid of specific allegations with respect to each defendant").

By referring to defendants collectively as "Kindred," each of the eleven False Claims Act/Anti-Kickback/Stark Law schemes, as well as the four pleaded counts, fails to distinguish between the defendants, and therefore fails to meet the particularity requirements of pleading a False Claims Act claim. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) ("The Amended Complaint is devoid of specific allegations with respect to the separate Defendants. Thus, the Amended Complaint is also subject to dismissal without prejudice for failure to plead fraud with the requisite specificity as to each of the Defendants under Rule 9(b)."). It follows that the schemes themselves are therefore not described with the particularity required by Rule 9(b). *See Hopper*, 588 F.3d at 1324 (*qui tam* complaint must allege "the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them.").

Under the same reasoning, the two retaliation counts are due be dismissed. In each count, the Relators allege that "Kindred retaliated" by wrongfully discharging them after they raised concerns

---

[3] Presumably, Defendant Chris Gelvin, M.D., is included in Relators' "acquisition or merger" explanation. It is unclear, however, whether Relators sue Dr. Gelvin individually or his business entity, Chris R. Gelvin, M.D., P.A. *Compare* (Dkt. 97 p.1) (naming Chris R. Gelvin, M.D., P.A. as a defendant), *with* (Dkt. 97 p. 4) (naming Chris Gelvin, M.D. as a defendant). And if being sued individually, it is unclear how Dr. Gelvin would be acquired or merged.

to their supervisors regarding "Kindred's fraud." *See* (Dkt. 97 ¶¶ 274-279). These allegations therefore fail to differentiate between each defendant's conduct. *See Weiland*, 792 F.3d at 1322-23.

To the extent defendants contend that the Second Amended Complaint fails to plead with particularity a specific submission of a false claim, their contention has merit. The submission of a false claim to the United States for payment is the "*sine qua non*" of a False Claims Act case, and the failure to allege the submission of a false claim is sufficient in itself to require dismissal. *See Clausen*, 290 F.3d at 1311. "[T]o satisfy Rule 9(b)'s heightened-pleading requirements, the relator must allege the 'actual presentment of a claim . . . with particularity,' . . . meaning particular facts about 'the "who," "what," "where," "when," and "how" of fraudulent submissions to the government.'" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1052 (11th Cir. 2015) (quoting *Hopper*, 588 F.3d at 1326; *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005)).

Relators allege in Counts I and II that "Kindred" knowingly presented false and fraudulent claims to the United States for payment. Rather than attributing the submission of a false billing to a particular defendant however, Relators lump the defendants together as "Kindred," thereby failing to plead the "who" requirement with particularity. (Dkt. 97 ¶¶ 271 and 273). *See Urquilla-Diaz*, 780 F.3d at 1052; *Brooks*, 116 F.3d at 1381.[4]

And because the Second Amended Complaint, in shotgun fashion, incorporates all preceding allegations of the eleven schemes into Counts I and II, and fails to distinguish between the six defendants, it is impossible to determine which factual allegations relate to which defendant, including the submission of the alleged false billing statements, and "leaves defendants unable to

---

[4] Moreover, upon a review of the exhibits Relators incorporate into their Second Amended Complaint (Dkts. 100, 109 (filed under seal)), it is unclear which parts of the exhibits Relators rely on or their relevance in tying together each alleged scheme to any specific, fraudulent claims submitted to the United States. *See Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1278 (11th Cir. 2018).

frame a response." *Transatlantic, LLC v. Humana, Inc.*, 666 F. App'x 788, 789, 791 (11th Cir. 2016) ("[W]hen the alleged fraud involves multiple defendants, Rule 9(b) requires that the plaintiff plead sufficient facts to 'inform each defendant of the nature of [its] alleged participation in the fraud.'") (citation omitted); *United States ex rel. v. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (complaint fails Rule 9(b) where relator "portrays the scheme and then summarily concludes that defendants submitted false claims to the government for reimbursement").

Accordingly, the Second Amended Complaint is **DISMISSED** ***without prejudice***. Relators are **GRANTED** fourteen (14) days to amend their complaint, which shall comply with Rules 8(a), 9(b), and 11(b) of the Federal Rules of Civil Procedure. Failure to do so will result in dismissal of this action without further notice.

**DONE AND ORDERED** this 12th day of September, 2019.

*/s/ James D. Whittemore*
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record; Counsel for the United States, the State of Florida, and Relators